IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,                    CR No. 06-60095-AA

                 Plaintiff,                  OPINION AND ORDER

      v.

CIRO MATEO-VERA,

                 Defendant.

_____

AIKEN, Judge:

      Defendant is charged with one count of felon in possession of
a firearm and one count of possession with intent to distribute 50
grams or more of methamphetamine.  Defendant moves to suppress any
and all objects, information, and statements obtained through the
search of a vehicle driven by defendant.  The government opposes
the motion, arguing that the search was consensual.  On July 3, the
court held an evidentiary hearing, and defendant and two witnesses
testified.  Defendant's motion is denied.

1    - OPINION AND ORDER

FACTS

On July 8, 2006, Officer Broderick and Sergeant O'Toole of the Lincoln City Police Department were involved in the stop of a gold 2000 Chevrolet Tahoe for a suspected traffic violation in Lincoln City, Oregon. The driver, defendant, told law enforcement officers that he resided at the Harbor Ridge Apartments in Lincoln City. Police determined that defendant was on post-prison supervision for a controlled substance offense. Additionally, defendant's passenger was recognized by Officer Broderick as an individual with numerous drug and firearms violations. Defendant consented to a search of his vehicle, but no contraband was found.

On July 18, 2006, Sergeant O'Toole received information from a confidential informant that a resident of Harbor Ridge Apartments was selling methamphetamine from his residence. The confidential informant described the dealer as a Hispanic male who drove a gold-colored sports utility vehicle (SUV). Sergeant O'Toole relayed this information to Officer Broderick.

On July 30, 2006 at approximately 1:00 a.m., defendant was stopped by Officer David Broderick in Lincoln City while driving his gold Chevrolet Tahoe. Earlier, defendant had driven by Sergeant O'Toole in the parking lot of the Harbor Ridge Apartments, and she followed defendant out of the parking lot. Eventually, Officer Broderick pulled in several car lengths behind defendant

2    - OPINION AND ORDER

and Sergeant O'Toole passed him.    As Officer Broderick followed defendant committed three lane violations.    Officer Broderick effectuated a traffic stop, with Sergeant O'Toole arriving at the scene shortly afterward.

Defendant asked why he was stopped, and once informed, he disputed the reason for stop.    Officer Broderick asked defendant for his drivers license, vehicle registration and insurance, and defendant handed him the documents.    Officer Broderick ran a background check on defendant and again learned that defendant was on post-prison supervision for controlled substance convictions. Officer Broderick walked back to defendant's vehicle, returned the documents, and informed defendant that he would not receive a citation for the traffic offense.

Officer Broderick then asked defendant if he would step out of the vehicle to talk with Officer Broderick.    Defendant agreed and exited his vehicle.    Officer Broderick asked defendant if he had any controlled substances, cash, or firearms inside the car. Defendant replied, "No," and volunteered, "You can look."    Officer Broderick repeated his request and asked permission to search defendant and the interior his vehicle and its contents.    Defendant replied, "Look through everything."    Officer Broderick then asked defendant if there was anything in the car that did not belong to him, and defendant replied that everything in the vehicle was his and again said, "Look."

Officer Broderick searched defendant and found $2,145 in currency in his wallet. In defendant's vehicle, Sergeant O'Toole found and seized plastic bundles containing methamphetamine, scales, packaging material, and a Ruger .357 handgun, serial number 57227347.

<u>DISCUSSION</u>

Defendant contends that no probable cause existed to effectuate a traffic stop, that he was unlawfully seized, and that his consent to search his vehicle was not voluntary. Defendant claims that he felt compelled to consent to the search, because Officer Broderick retained his vehicle registration and licensing documents. As such, defendant asserts that he had no alternative other than to comply with Officer Broderick's direction. The government responds that probable cause existed to stop defendant's car, that Officer Broderick's questioning did not prolong the stop, and that defendant gave valid consent to search his vehicle.

A traffic stop is reasonable where the police have probable cause to believe that a traffic violation has occurred, even if the reason for the stop is pretextual. See <u>Whren v. United States</u>, 517 U.S. 806, 810, 813 (1996). "The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop." <u>United States v. Wallace</u>, 213 F.3d 1216, 1219 (9th Cir. 2000). Defendant nevertheless argues that the tactic employed by Sergeant O'Toole

and Officer Broderick – one officer passing a vehicle while another staying behind in the event the driver "relaxes" and commits a traffic violation – is unconstitutional and "induced" defendant to commit a traffic violation.  However, I fail to discern how an officer following a driver by several car lengths is able to "induce" a traffic violation.  Regardless, Officer Broderick gave detailed and precise testimony regarding the time, location, and nature of defendant's lane violations.  Therefore, I find that probable cause existed to stop defendant for suspected traffic violations.

Defendant also argues that Officer Broderick's questions regarding drugs and firearms exceeded the scope of the stop.  The Ninth Circuit previously held that, during a traffic stop an officer may only "ask questions that are reasonably related in scope to the justification for his initiation of contact" and may expand the scope of questioning only if he "articulate[s] suspicious factors that are particularized and objective." United States v. Murillo, 255 F.3d 1169, 1174 (9th Cir. 2001); see also United States v. Perez, 37 F.3d 510, 513 (9th Cir. 1994) ("Questions asked during an investigative stop must be reasonably related in scope to the justification for their initiation.") (quotation marks and citation omitted).

However, the Supreme Court recently held that "mere police questioning does not constitute a seizure" unless it extends the

detention of the individual. <u>Muehler v. Mena</u>, 544 U.S. 93, 100-01 (2005) (quotation marks and citation omitted). The Ninth Circuit recently applied <u>Muehler</u> to a traffic stop, finding that "[a]lthough <u>Muehler</u> involved an interrogation during a search of a building, and made no mention of our precedent regarding questioning during traffic stops, its reasoning is equally applicable in the traffic stop context." <u>United States v. Mendez</u>, 476 F.3d 1077, 1080 (9th Cir. 2007). Accordingly, no reasonable suspicion is required to justify questioning that does not prolong the stop. <u>Id.</u> at 1080-81; <u>Muehler</u>, 544 U.S. at 100-01.

Defendant attempts to distinguish <u>Mendez</u> on the ground that the unrelated questioning in that case occurred while officers were running a check on the defendant during the stop. In contrast, defendant argues that in this case, Officer's Broderick's questioning occurred after the he had completed the background check on defendant and had informed defendant that he would not be cited, thus terminating the stop before Officer Broderick asked further questions about guns and drugs.

I do not find that Officer Broderick's questioning prolonged the traffic stop, because defendant consented and agreed to speak with Officer Broderick outside of the vehicle. Notably, Officer Broderick asked defendant only one question before defendant encouraged him to "look" in the vehicle; thus any extension of the stop lasted a minute or less. Further, Officer Broderick did not

order defendant to exit the vehicle, and I find his testimony credible that he did not act in a threatening, coercive, or intimidating manner but simply asked defendant matter-of-factly. Therefore, I do not find that Officer Broderick's one question prolonged the stop, given that defendant agreed to speak with him.

Even if Officer Broderick's actions and defendant's acquiescence did not transform the traffic stop into a consensual one, Officer Broderick possessed reasonable suspicion to conduct an investigatory stop. "Investigatory traffic stops are akin to the on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968); accordingly, the same objective standard applies: a police officer may conduct an investigatory traffic stop if the officer has reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006) (quotation marks and citation omitted).

Here, Officer Broderick possessed information that defendant had been convicted of delivery of a controlled substance, that defendant socialized with an individual who had a lengthy history of drug and firearms offenses, and that a confidential informant informed Sergeant O'Toole that a Hispanic male who drove a gold-colored SUV was dealing methamphetamine from his residence at the Harbor Ridge Apartments, where defendant lived. Therefore, under the totality of the circumstances, Officer Broderick reasonably

suspected criminal activity.  See United States v. Arvizu, 534 U.S.
266, 274-75 (2002); United States v. Torres-Sanchez, 83 F.3d 1123,
1128-29 (9th Cir. 1996).

Finally, I find that defendant gave valid consent to search
his vehicle.   Whether consent was voluntary depends on "the
totality of the circumstances" and is a question of fact.   United
States v. Morning, 64 F.3d 531, 533 (9th Cir. 1995).   "A person's
obedience to a show of authority is by itself insufficient to
establish voluntary consent."  United States v. Chan-Jimenez, 125
F.3d 1324, 1328 (9th Cir. 1997).   Rather, several factors must be
considered in determining whether consent is voluntary, though none
are dispositive.  These factors include:  (1) whether defendant was
in custody;  (2) whether the arresting officers have their guns
drawn;  (3) whether Miranda warnings have been given;  (4) whether
the defendant was told he has a right not to consent;  and (5)
whether defendant was told a search warrant could be obtained.
Although these factors may aid in the determination of consent,
"the full richness of any encounter must be considered by the
district court."  Morning, 64 F.3d at 533.

Here, Officer Broderick had returned the vehicle documents to
defendant, and he was not in custody.   Moreover, in response to
Officer Broderick's questioning whether defendant possessed drugs
or a firearm, defendant repeatedly told Officer Broderick to "look"
in his vehicle and see for himself.   Defendant does not contend

that the officers had their guns drawn or acted in a menacing manner, or that he was coerced into giving consent to search. Therefore, I find that the search of defendant's vehicle was pursuant to valid consent by defendant.  I sum, I find that Officer Broderick had probable cause to stop defendant, and that defendant consented to further questioning and to the search of his vehicle. Accordingly, the stop and search did not violate defendant's constitutional rights.

<u>CONCLUSION</u>

Defendant's Motion to Suppress Evidence (doc. 23) is DENIED. IT IS SO ORDERED.

Dated this ____*1*____ day of August, 2007.


_____
Ann Aiken
United States District Judge